UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

NICHOLAS GREEN                                                                    PLAINTIFF

V.                                    NO. 3:16-CV-295-BD

NANCY A. BERRYHILL, Acting Commissioner
Social Security Administration                                                    DEFENDANT

# ORDER

## I. Introduction:

On April 28, 2015, Nicholas Green applied for disability income benefits, alleging disability beginning on April 28, 2015. (Tr. at 22) Mr. Green's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Green's application (Tr. at 32), and the Appeals Council denied his request for review. (Tr. at 1) Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Mr. Green has requested judicial review. For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Mr. Green had not engaged in substantial gainful activity since the alleged onset date of April 28, 2015. (Tr. at 24) At Step Two of the five-step analysis, the ALJ found that Mr. Green has the following severe impairments: degenerative disc disease, right carpal tunnel syndrome, mood disorder, chronic

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

obstructive pulmonary disease, obesity, and an anxiety disorder (post-traumatic stress disorder). *Id*.

After finding that Mr. Green's impairments did not meet or equal a listed impairment (Tr. at 24), the ALJ determined that Mr. Green had the residual functional capacity ("RFC") to perform light work, with limitations. (Tr. at 26) He could only occasionally reach overhead bilaterally; he could only occasionally climb stairs or ramps, and only occasionally balance, kneel, stoop, crouch, and crawl. He could not climb ladders, ropes, or scaffolds; he should avoid exposure to pulmonary irritants, such as dust, odors, or fumes; and he must avoid hazards such as unprotected heights and moving mechanical parts. In addition, he was limited to simple, routine, and repetitive tasks, and only simple work-related decisions; contact with others should be incidental to the work performed, and the supervision should be simple, direct, and concrete; he would need a cane to ambulate; and he would need to alternate after standing for an hour to sitting for 45 minutes. *Id*.

The ALJ found that Mr. Green was unable to perform his past relevant work. (Tr. at 31) At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Mr. Green's age, education, work experience and RFC, that jobs existed in significant numbers in the national economy that he could perform. (Tr. at 32) Based on that determination, the ALJ held that Mr. Green was not disabled. *Id.*

### III. <u>Discussion:</u>

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means,"enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

A. Arguments on Appeal

Mr. Green argues that the ALJ's decision is not supported by substantial evidence because the ALJ's RFC determination did not fully incorporate limitations stemming from carpal tunnel syndrome and PTSD.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining a claimant's RFC, the ALJ must establish, by competent medical evidence, the physical and mental activities that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

As for carpal tunnel syndrome, Mr. Green first complained of right wrist pain on October 11, 2013. (Tr. at 1408-1414) On April 1, 2015, Dr. Mandeep Malhotra diagnosed carpal tunnel syndrome and right median neuropathy. (Tr. at 1499-1507) Even so, Dr. Malhotra noted that those conditions did not affect Mr. Green's ability to work. (Tr. at 1505) A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Dr. Malhotra wrote that the effects from Mr. Green's carpal tunnel syndrome were minimal. (Tr. at 1507)

A social worker, Kenyetta McIntosh, saw Mr. Green on July 22, 2015, and noted that he did not have any physical disabilities that precluded him from performing activities of daily living. (Tr. at 1480-1481) In fact, Mr. Green testified that he cooked for himself, did his own laundry, and mowed his yard. (Tr. at 58-59) He also cared for his children after school. (Tr. at 59) Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

On February 5, 2016, Dr. Baker Stewart, M.D., diagnosed Mr. Green with mild right carpal tunnel syndrome. (Tr. at 1596-1602) Objective tests that show mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Dr. Stewart wrote that there was no evidence of

disability or functional deficits in Mr. Green's upper extremities, including in his right wrist. *Id*.

Two state-agency medical consultants reviewed the medical records, and both assigned a light RFC with postural limitations. (Tr. at 80, 98) The ALJ considered the evidence as a whole, including minimal treatment for carpal tunnel syndrome, and assigned Mr. Green an RFC with even more functional restrictions than those provided by the state doctors. Considering the mild objective findings, conservative treatment, and ability to engage in activities of daily living, the RFC assigned by the ALJ fully incorporated Mr. Green's limitations from carpal tunnel syndrome.

As for PTSD, Mr. Green had a 70% service-connected disability with 30% for PTSD as of October of 2013. (Tr. at 1423-1427) A PTSD screen was positive on October 11, 2013. (Tr. at 1413) On October 23, 2013, Mr. Green reported that his psychiatric medications were working well. (Tr. at 1406) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

His next record of mental health treatment was a visit on March 20, 2015 to Mai Snow, a clinical social worker. (Tr. at 1507-1508) At that visit, he reported that his PTSD was worse, but Ms. Snow opined that Mr. Green was focused more on getting benefits than on his symptoms. Notably, Mr. Green declined therapy. *Id.* The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v.*

5

*Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Ms. Snow recalled that when she saw him in 2013, he did not want to work and was focused on increasing his benefits. *Id.*

On April 1, 2015, Mr. Green saw Dr. Sheryl Ebert, Ph.D., for PTSD symptoms. She saw no unusual behaviors and noted that Mr. Green had goal-directed and logical thoughts. (Tr. at 1498) She also noted that, while Mr. Green met the criteria for PTSD, he was able to continue working full-time and had not had treatment for PTSD. (Tr. at 1495) Working while experiencing symptoms alleged to be disabling undermines credibility. *Gowell v Apfel*, 242 F.3d 793, 798 (8th Cir. 2001). Mr. Green again endorsed a desire to be found 100% disabled. (Tr. at 1498)

Mr. Green attended therapy for PTSD in 2015 and 2016, but on October 7, 2015, he appeared to be in no significant psychological distress, and again discussed a need for benefits. (Tr. at 1448-1449). Mr. Green expressed only minor psychological concerns*. Id.* On February 5, 2016, Mr. Green saw Dr. Randolph Potts, a psychologist, and reported feeling increasing anger and emotional detachment. (Tr. at 1587-1596) Mr. Green said that he had been laid off from his Dish Network job following a "scandal" at work. (Tr. at 1589-1590) Ceasing work for reasons other than alleged disability undermines a claimant's claim that her impairments are disabling. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). Mr. Green again emphasized his desire to receive benefits.

The Court finds Mr. Green's repeated statements of a desire to stop working and receive benefits to be informative and reflective of possible malingering. The disability

benefit program serves those with proven disabling impairments rather than financial assistance for those simply seeking a reprieve from work.

Mr. Green did not require intensive mental health counseling or inpatient psychiatric care, and he was able to continue to engage in activities of daily living. His conservative care does not reflect a disabling mental condition. The mental portion of the RFC, which limited Mr. Green to unskilled work, fully incorporated his limitations.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC fully incorporated all of Mr. Green's limitations. The finding that Mr. Green was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 11th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE